# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF INDIANA
# INDIANAPOLIS DIVISION

| | |
|---|---|
| ANTELMO JUAREZ, | ) |
| | ) |
| Petitioner, | ) |
| v. | ) No.: 1:16-cv-00410-JMS-MPB |
| | ) |
| RICHARD BROWN, | ) |
| | ) |
| Respondent. | ) |

## Entry Denying Petition for Writ of Habeas Corpus and Denying Certificate of Appealability

An Indiana jury convicted Antelmo Juarez of murder and criminal gang activity. He was sentenced in accord with that verdict. Mr. Juarez now seeks a writ of habeas corpus.

For the reasons explained in this Entry, Mr. Juarez's petition for a writ of habeas corpus is **denied** and the action is dismissed with prejudice. In addition, the Court finds that a certificate of appealability should not issue.

### THE PETITION FOR WRIT OF HABEAS CORPUS

### I. Applicable Law

The federal habeas corpus statute "permits a federal court to entertain only those applications alleging that a person is in state custody 'in violation of the Constitution or laws or treaties of the United States.'" *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (citing 28 U.S.C. § 2254(a)). "As amended by [the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA")], 28 U.S.C. § 2254 sets several limits on the power of a federal court to grant an application for a writ of habeas corpus on behalf of a state prisoner." *Id.* "Under the current regime governing federal habeas corpus for state prison inmates, the inmate must show, so far as bears on this case, that the state court which convicted him unreasonably applied a federal doctrine declared

by the United States Supreme Court." *Redmond v. Kingston,* 240 F.3d 590 (7th Cir. 2001) (citing 28 U.S.C. § 2254(d)(1); *Williams v. Taylor*, 529 U.S. 362 (2000); *Morgan v. Krenke*, 232 F.3d 562 (7th Cir. 2000)).[1]

"A state-court decision involves an unreasonable application of this Court's clearly established precedents if the state court applies this Court's precedents to the facts in an objectively unreasonable manner." *Brown v. Payton*, 544 U.S. 131, 141 (2005) (internal citations omitted). "The habeas applicant has the burden of proof to show that the application of federal law was unreasonable." *Harding v. Sternes*, 380 F.3d 1034, 1043 (7th Cir. 2004) (citing *Woodford v. Visciotti*, 537 U.S. 19, 25 (2002)). In short, the standard of § 2254(d) is "difficult to meet . . . because it was meant to be." *Burt v. Titlow,* 134 S. Ct. 10, 16 (2013) (internal quotation marks omitted); *see also Cavazos v. Smith,* 132 S. Ct. 2, 7–8 (2011) (per curiam) (citing Supreme Court jurisprudence "highlighting the necessity of deference to state courts in § 2254(d) habeas cases").

The first step under § 2254(d)(1) is "to identify the 'clearly established Federal law, as determined by the Supreme Court of the United States' that governs the habeas petitioner's claims." *Marshall v. Rodgers,* 133 S. Ct. 1446, 1449 (2013) (citing *Williams v. Taylor*, 529 U.S. at 412; *Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009)). In proceeding with the analysis, a federal habeas court "must determine what arguments or theories supported, or, [in the case of an unexplained denial on the merits], could have supported, the state court's decision; and then it

---

[1] "In § 2254 proceedings, federal courts are foreclosed from fact-finding. We therefore defer to the findings of the [state] court, which have not been challenged and are presumed to be correct unless rebutted by clear and convincing evidence." *Jones v. Butler,* 778 F.3d 575, 578 (7th Cir. 2015) (citing 28 U.S.C. § 2254(e)(1) and *Harris v. Thompson,* 698 F.3d 609, 613 (7th Cir. 2012)). A state court's factual finding is unreasonable only if it "ignores the clear and convincing weight of the evidence." *Taylor v. Grounds,* 721 F.3d 809, 817 (7th Cir. 2013) (internal quotation marks and citations omitted). No showing of such a nature has been made here.

must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme Court]." *Harrington v. Richter*, 562 U.S. 86, 102 (2011).

## II. Background

Following a jury trial, Juarez was found guilty of murder and criminal gang activity as a Class D felony. His convictions were affirmed in *Juarez v. State,* 2010 WL 5122618 (Ind.Ct.App. Dec. 13, 2010)("*Juarez I*"), and the denial of his petition for post-conviction relief was affirmed in *Juarez v. State*, 2015 WL 3767090 (Ind.Ct.App.), *transfer denied,* 37 N.E.3d 493 (Ind. 2015)("*Juarez II*"). The evidence associated with Mr. Juarez's offenses was summarized in his direct appeal:

> On February 18, 2006, fifteen-year-old Juarez and his nineteen-year-old brother, Oscar Perez, were members of the Nortenos gang. That evening, as they were leaving their residence with some of their friends, Perez told Juarez to go back inside and get the gun, which was a SKS rifle. Juarez put the rifle into the back of a friend's Dodge Durango. At some point during the evening, Perez moved the rifle to another vehicle, which was an Acura.
>
> The group later went to La Bamba, a club in Goshen. While they were in the club, the group of Nortenos got into a fight with a group of rival gang members, the Surenos. Security officers threw the Nortenos out of the club, and the Surenos followed them to the parking lot. The Surenos left the parking lot in a Chevrolet Malibu, while the Nortenos followed in the Durango and the Acura. The Durango pulled up beside the Malibu, and some Nortenos gang members shot paintballs at the Malibu. Juarez and Perez were passengers in the Acura, which was following the Malibu and the Durango.
>
> After seeing that the altercation was continuing, Perez told Juarez to "hand me the gun real quick," and Juarez handed the rifle to Perez. Tr. p. 880. The Surenos became upset about the paintballs, and the driver of the Malibu rammed into the back of the Durango. Perez then rolled his window down and fired the rifle at the Malibu, killing fourteen-year-old Rogelio Reyes and wounding Saul Rodriguez.

*Juarez I,* 2010 WL 5122618, at *1.

Several of Mr. Juarez's habeas arguments relate to jury instructions. Final instruction 2 reads as follows:

> Count I:
> The undersigned affiant swears that on or about the 19th day of February, 2006, at the County of Elkhart and State of Indiana, one ANTELMO JUAREZ, did knowingly assist one Oscar Eduardo Perez in the killing of another human being, to wit: Rogelio Reyes, as the said Oscar Eduardo Perez did shoot the said Rogelio Reyes with a dangerous and deadly weapon, to-wit: a firearm, and as a direct and proximate result of the shooting as aforesaid, the said Rogelio Reyes was fatally wounded and did languish and die in said County and State on the 19th day of February, 2006 . . . .

Final instruction 3 reads as follows:

> The crime of murder as alleged in Count I is defined by statute as follows:
>
> A person who knowingly aids, induces or causes another person in killing another human being commits murder, a felony.
>
> To convict the defendant, the State must have proved each of the following elements:
>
> > The defendant:
> > 5. knowingly
> > 6. aided, induced, or caused
> > 7. the killing of
> > 8. another human being.
>
> The State must prove that the defendant knowingly committed each element of this offense.
>
> If the State failed to prove each of these elements beyond a reasonable doubt, you should find the defendant not guilty.
>
> If the State did prove each of these elements beyond a reasonable doubt, you should find the defendant guilty of murder, a felony.

Final instruction 6 states:

> A person is responsible for the acts of his accomplice as well as his own. The acts of one person are attributable to all who are knowingly acting together during the commission of a crime. Accordingly, the State need not prove, beyond a reasonable doubt, that the defendant personally, and acting by himself, committed all of the elements of the crime with which he is charged. However, the State must prove, beyond a reasonable doubt, that the defendant and another person or persons, acting together, committed all of the elements of the crime with which he is charged.

> It is not necessary for the State to show that a defendant was a party to a preconceived scheme; it must merely show concerted action or participation in an illegal act by the defendant.
>
> Although it is true that mere presence is not enough to show a person's participation in a crime, such presence may be considered with all other evidence to determine guilt. Factors considered by the fact-finder to determine whether a defendant aided another in the commission of a crime include: (1) presence at the scene of the crime; (2) companionship with another engaged in the crime; (3) failure to oppose the commission of the crime; and (4) the course of conduct before, during, and after the offense which tends to show complicity.
>
> You are further instructed that accomplice liability applies to the contemplated offense and all acts that are a probable and natural consequence of the concerted action.

These instructions are discussed as part of Mr. Juarez's assertions of ineffective assistance of counsel in Part III.B. of this Entry.

### III. Discussion

#### A. Sufficiency of the Evidence

Mr. Juarez challenges the sufficiency of the evidence. The controlling federal law on this subject is the "rigorous" standard set forth in *Jackson v. Virginia*, 443 U.S. 307, 319 (1979): "evidence, viewed in the light most favorable to the State, is sufficient to support a conviction so long as any rational trier of fact could find the essential elements of the offense to have been proved beyond a reasonable doubt." *Jones v. Butler*, 778 F.3d 575, 581 (7th Cir. 2015). Therefore, "[f]ederal review of these claims . . . turns on whether the state court provided fair process and engaged in reasoned, good-faith decisionmaking when applying *Jackson*'s 'no rational trier of fact' test." *Gomez v. Acevedo*, 106 F.3d 192, 199 (7th Cir. 1999).

Federal courts must look to state law for the substantive elements of the criminal offense. *Jackson,* 443 U.S. at 324 n.16. To the extent an insufficient evidence claim involves an interpretation of state law, the state court's interpretation "binds a federal court sitting in habeas corpus." *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) (*per curiam*); *see also Schad v. Arizona*, 501

U.S. 624, 636 (1991) (federal courts are not free to substitute their own interpretations of state statutes for those of a state's courts); *Mulanney v. Wilber*, 421 U.S. 684 (1975) (exceptional circumstances being absent, United States Supreme Court accepted, as binding, the Maine Supreme Judicial Court's construction of its state homicide law).

The Indiana Court of Appeals addressed this claim in Mr. Juarez's direct appeal, and in doing so first explained its standard:

> When reviewing the sufficiency of the evidence needed to support a criminal conviction, we neither reweigh evidence nor judge witness credibility. *Bailey v. State,* 907 N.E.2d 1003, 1005 (Ind. 2009). "We consider only the evidence supporting the judgment and any reasonable inferences that can be drawn from such evidence." *Id.* We will affirm if there is substantial evidence of probative value such that a reasonable trier of fact could have concluded the defendant was guilty beyond a reasonable doubt. *Id.* It is well established that "circumstantial evidence will be deemed sufficient if inferences may reasonably be drawn that enable the trier of fact to find the defendant guilty beyond a reasonable doubt." *Pratt v. State,* 744 N.E.2d 434, 437 (Ind. 2001).

*Juarez I,* 2010 WL 5122618, at *2. Mr. Juarez was charged as an accomplice.

> Under an accomplice liability theory, "the evidence need not show that the accomplice personally participated in the commission of each element of a particular offense." *Cohen v. State,* 714 N.E.2d 1168, 1178 (Ind.Ct.App. 1999), *trans. denied.* Accomplice liability "applies to the contemplated offense and all acts that are a probable and natural consequence of the concerted action." *Wieland v. State,* 736 N.E.2d 1198, 1202 (Ind. 2000). Thus, the accomplice is liable "for everything . . . which follows incidentally in the execution of the common design, as one of its natural and probable consequences, even though it was not intended as a part of the original design or common plan . . . ." *Fox v. State,* 497 N.E.2d 221, 227–28 (Ind. 1986). The trier of fact considers the following factors to determine whether a defendant aided another in the commission of a crime: (1) presence at the scene of the crime; (2) companionship with another engaged in a crime; (3) failure to oppose the commission of the crime; and (4) the course of conduct before, during, and after the occurrence of the crime. *Wieland,* 736 N.E.2d at 1202.

*Kendall v. State*, 790 N.E.2d 122, 131–32 (Ind.Ct.App. 2003).

The Indiana Court of Appeals then summarized the evidence which reasonably supported the verdict:

> . . . . The evidence presented at trial demonstrated that, as they were leaving for the evening, Juarez retrieved Perez's rifle for him. Later in the evening, after a fight with a rival gang at a club, the altercation continued with Juarez and Perez's Nortenos gang shooting paintballs at the Surenos gang's vehicle. The Surenos retaliated by ramming the back of one of the Nortenos gang's vehicles. Juarez and Perez were in another vehicle, and when Perez saw the altercation beginning, he told Juarez to hand him the gun. Juarez handed Perez the rifle, and Perez fired at the Surenos gang's vehicle, killing Reyes.
>
> The State presented evidence on each of the four factors relevant to accomplice liability. In particular, Juarez was present at the scene, he was a brother and fellow-gang member of Perez, and he handed t[he] weapon to Perez during the altercation. It was for the jury to decide whether Juarez knowingly or intentionally aided Perez in killing Reyes. Juarez's argument is merely a request that we reweigh the evidence, which we cannot do. We conclude that, under these circumstances, the evidence was sufficient to sustain Juarez's conviction for murder.

*Juarez I,* 2010 WL 5122618, at *2.

The foregoing analysis by the Indiana Court of Appeals demonstrates that it engaged in reasoned, good-faith decision-making when applying the *Jackson*-compatible standard to the challenge to the sufficiency of the evidence. First, it set forth the state analog to the *Jackson* standard and what the State was required to prove the conviction for murder—specifically, the elements required for accomplice liability. It found and recited from the evidence the factors relevant to this determination and then noted that it was for the jury to decide whether Mr. Juarez acted with a sufficiently culpable state of mind. This was an assessment of the evidence compatible with the federal *Jackson* standard and was a reasonable applicable of that standard. And because it was a reasonable application of the controlling federal standard, "[u]nder AEDPA . . . it cannot be disturbed." *Hardy v. Cross,* 132 S. Ct. 490, 495 (2011).

### B. Assistance of Counsel

Mr. Juarez's remaining claims are that he was denied the effective assistance of counsel, both at trial and in his direct appeal. Mr. Juarez contends that his trial counsel was ineffective because counsel failed to: 1) object to Preliminary and Final Instructions 2 and 3; 2) object to Final Instruction 6; 3) tender a defense-of-others instruction; 4) file a motion to suppress his statement to police; 5) object to Oscar's testimony; and 6) object to the prosecutor's closing argument. Mr. Juarez also argues that the cumulative effect of the alleged errors amounted to ineffective assistance of counsel.

Mr. Juarez's contention regarding his representation in *Juarez I* is that appellate counsel was ineffective for not raising the instructional error issues.

The clearly established federal law as to such claims is that a defendant has a right under the Sixth Amendment to effective assistance of counsel. *See Strickland v. Washington,* 466 U.S. 668, 687 (1984). For a petitioner to establish that "counsel's assistance was so defective as to require reversal," he must make two showings: (1) that counsel rendered deficient performance that (2) prejudiced the petitioner. *Id.* With respect to the performance requirement, "[t]he proper measure of attorney performance remains simply reasonableness under prevailing professional norms." *Wiggins v. Smith*, 539 U.S. 510, 521 (2003) (quoting *Strickland*, 466 U.S. at 688). "[T]o establish prejudice, a 'defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 534 (quoting *Strickland*, 466 U.S. at 694). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

There is more. AEDPA requires a "doubly deferential" review of a state prisoner's ineffective assistance of counsel claim. *Cullen v. Pinholster*, 131 S. Ct. 1388, 1410–11 (2011) (citation omitted).

> Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is . . . difficult. The standards created by *Strickland* and § 2254(d) are both "highly deferential," [*Strickland*] at 689, 104 S. Ct. 2052; *Lindh v. Murphy*, 521 U.S. 320, 333, n.7, 117 S. Ct. 2059, 138 L.Ed.2d 481 (1997), and when the two apply in tandem, review is "doubly" so, *Knowles*, 556 U.S. at __, 129 S. Ct. at 1420. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. 556 U.S., at ___, 129 S. Ct. at 1420. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard.

*Harrington*, 562 U.S. at 105.

*Trial Counsel's Representation.* Juarez argues that his trial counsel was ineffective by failing to object to final instructions 2 and 3. The Indiana Court of Appeals reviewed the instructions which are challenged and found that they correctly stated the law of Indiana. A contrary argument cannot be the basis of a § 2254(a) claim of ineffective assistance of counsel because "[a] federal court cannot disagree with a state court's resolution of an issue of state law." *Miller v. Zatecky*, 820 F.3d 275, 277 (7th Cir. 2016). This point was recently reinforced in *Harper v. Brown*, No. 15-2276, 2017 WL 3224907, at *3 (7th Cir. July 31, 2017), wherein the Court stated: "The premise of the state court's *Strickland* ruling is its holding that Harper's sentence is appropriate, and so any Rule 7(B) argument would have failed. That's an application of Indiana law, and on § 2254 habeas review, we 'cannot disagree with a state court's resolution of an issue of state law.'" (quoting *Miller*); *see also Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) ("discussing Ohio's doctrine of transferred intent, "a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting on habeas

review").

Juarez argues that trial counsel was ineffective by failing to object to final instruction 6, which was the accomplice liability instruction.

The Indiana Court of Appeals correctly recognized the danger of an instruction creating a mandatory presumption as to an element of an offense. *See Sandstrom v. Montana*, 442 U.S. 510, 514-15, 524 (1979) (stating that an instruction that included the word "presume" did not describe a "permissive inference" but could have been viewed as mandatory, which was improper). A jury instruction that "reduce[s] the level of proof necessary for the Government to carry its burden [of proof beyond a reasonable doubt] . . . is plainly inconsistent with the constitutionally rooted presumption of innocence." *Cool v. United States*, 409 U.S. 100, 104 (1972). In *Francis v. Franklin,* 471 U.S. 307 (1985), the Supreme Court distinguished between "mandatory presumptions" and "permissive inferences":

> The court must determine whether the challenged portion of the instruction creates a mandatory presumption, or merely a permissive inference. A mandatory presumption instructs the jury that it must infer the presumed fact if the State proves certain predicate facts. A permissive inference suggests to the jury a possible conclusion to be drawn if the State proves predicate facts, but does not require the jury to draw that conclusion.

*Id.* at 314. The Indiana Court of Appeals explained that there was no transgression through final instruction 6 in Mr. Juarez's case:

> *Sandstrom* is distinguishable for two reasons. First, *Sandstrom* was not an accomplice-liability case. Second, the instruction in this case does not include the word "presume," and we fail to see how it creates a mandatory presumption of any kind. Further, and most important, the last sentence of this instruction is a correct statement of the law. *See Wieland v. State,* 736 N.E.2d 1198, 1202 (Ind. 2000); *Tuggle v. State,* 9 N.E.3d 726, 736 (Ind.Ct.App. 2014) (explaining that "accomplice liability applies to the contemplated offense and all acts that are a probable and natural consequence of the concerted action").

*Juarez II, 2015 WL 3767090,* at *5. Instruction 6 did not inform the jury that it was required to

infer an element of the offense with which Mr. Juarez was charged upon its finding of a basic fact, and consequently the Indiana Court of Appeals reasonably concluded that Instruction 6 did not create a mandatory presumption. *Patterson v. N.Y.*, 432 U.S. 197, 215 (1977) ("[A] State must prove every ingredient of an offense beyond a reasonable doubt and . . . may not shift the burden of proof to the defendant by presuming that ingredient upon proof of the other elements of the offense"). In turn, an objection to Instruction 6 would not have been sustained and it was not ineffective of counsel to not register such an objection. *Warren v. Baenen*, 712 F.3d 1090, 1104 (7th Cir. 2013).

Mr. Juarez claims that trial counsel was ineffective because he failed to tender a defense of others instruction. He claims that the jury should have been instructed that he was defending his friends when he handed Perez the rifle. However, the defense at trial was to strive for a lesser offense, which would not be consistent with a defense of others defense. Because of this, trial counsel made a reasonable strategic decision to argue that Mr. Juarez's actions were reckless. Indeed, the *Strickland* analysis requires a court to "affirmatively entertain the range of possible reasons [the petitioner's] counsel may have had for proceeding as they did." *Cullen v. Pinholster*, 131 S. Ct. 1388, 1407 (2011). Mr. Juarez's attorney argued from the evidence known to him. He argued the defense which was agreed to prior to trial. His failure to defend on some other basis— on some basis not supported by the evidence—was not ineffective assistance. Defense counsel may concede a defendant's guilt of lesser offenses in an effort to avoid conviction on more serious charges without running afoul of the Sixth Amendment. *See, e.g., Poindexter v. Mitchell*, 454 F.3d 564, 582 (6th Cir. 2006) (citing *Florida v. Nixon*, 543 U.S. 175, 189 (2004)).

During redirect examination, Perez exhibited an outburst in which he insisted that he was solely to blame for Reyes's death. There was no objection from Mr. Juarez's counsel, leading

the Indiana Court of Appeals to first conclude that any claim of error had been waived and to then note that the testimony was helpful to Mr. Juarez, leaving him without having suffered prejudice. *Juarez II,* 2015 WL 3767090, at *8. Thus, counsel was not ineffective for failing to object to testimony that helped Mr. Juarez's defense.

Mr. Juarez also claims that trial counsel was ineffective for failing to file a motion to suppress his statement to police. The circumstances surrounding the statement were reviewed by the Indiana Court of Appeals in *Juarez II*. "Following the shooting, Juarez and his mother, Maria Botello, went to the Goshen police station, where they were both advised of Juarez's *Miranda* rights. Botello and Juarez were given time to consult privately before they both signed a form waiving those rights. Juarez subsequently gave police a statement wherein he admitted that after the gang members in the Durango fired paintballs at the Malibu, he handed the rifle to his brother, Oscar, who fired multiple shots at the Malibu. The trial court admitted this statement into evidence at trial." *Juarez II,* 2015 WL 3767090, at *1. The principal focus of the challenge to this item of evidence was the validity of the advisement of rights and waiver signed by Mr. Juarez's mother (as well as by Mr. Juarez himself). The post-conviction court concluded from the evidence that police followed proper procedure for interviewing juveniles and in *Juarez II* the Court of Appeals found that Mr. Juarez failed to show that his mother did not understand the advisement and waiver of rights. *Juarez II,* 2015 WL 3767090, at *7. Mr. Juarez therefore did not suffer ineffective assistance of counsel when no motion to suppress his statement to police was filed. *United States ex rel. Link v. Lane*, 811 F.2d 1166, 1170 (7th Cir. 1987) ("Petitioner cannot demonstrate prejudice from counsel's failure to object unless there is a legally supportable argument for excluding the statements.").

During closing argument, defense counsel did not object when the prosecutor made three references to Perez's convictions for murder and attempted murder. Mr. Juarez contends that it was ineffective assistance for counsel to not object to the prosecutor's argument. However, the trial court instructed the jury that such references were admissible only for impeachment purposes and that it had to assess Juarez's guilt without regard to Perez's convictions. In addition, the following language was set forth in Final Instruction No. 8: "The fact that a co-defendant pleads guilty or is convicted is not evidence of the guilt of any other defendant, or that the crime charged in the information was committed. The guilt or innocence of the defendant still on trial must be determined by the jury solely by the evidence introduced in the trial in this case." Additionally, at counsel's request at the conclusion of Oscar Perez's direct examination, the trial court instructed the jury, "Ladies and Gentlemen, the last questions asked relating to the convictions are admissible for impeachment of the witness only. They're not admissible for any other purpose." The limited permitted use of the testimony that Perez had been convicted of the murder of Rogelio Reyes was fully conveyed to the jury and these instructions limited the likelihood of unfair prejudice to Mr. Juarez. *See United States v. Foster,* 376 F.3d 577, 592 (6th Cir. 2004). "After all, '[w]e normally presume that a jury will follow an instruction to disregard inadmissible evidence inadvertently presented to it, unless there is an overwhelming probability that the jury will be unable to follow the court's instructions . . . and a strong likelihood that the effect of the evidence would be devastating to the defendant.'" *Rodriguez v. Gossett*, 842 F.3d 531, 539 (7th Cir. 2016)(quoting *Greer v. Miller*, 483 U.S. 756, 766 n.8 (1987)). After citing this principle, the Indiana Court of Appeals noted its "agree[ment] with the State that even if the jury used the prosecutor's references to the crimes as substantive evidence that [Perez] was guilty of murder, the instruction explained that the jury could not find Juarez guilty as an accomplice to murder simply because another jury

had found [Perez] guilty of murder. We further agree with the State that this instruction cures any potential prejudice caused by the prosecutor's argument." *Juarez II,* 2015 WL 3767090, at *9.

The foregoing shows that Mr. Juarez was not prejudiced by his attorney's failure to object to the portion of the prosecutor's closing argument just described. Mr. Juarez has also failed to show deficient performance when counsel did not object. The Indiana Court of Appeals reasonably determined that trial counsel had strategic reasons for not objecting. Mr. Juarez's attorney explained in the post-conviction relief action that, in his experience, jurors tend to respond negatively when counsel objects during the State's closing argument, and an attorney who makes such objections risks losing the credibility he has established with the jury during the course of the trial. *Juarez II,* 2015 WL 3767090, at *9. It is well-established that a decision not to object for reasons such as these is a valid strategic decision that does not support an ineffective assistance claim. *Yu Tian Li v. United States*, 648 F.3d 524, 531 (7th Cir. 2011) ("Li's counsel explained [ ] that he had not objected for strategic reasons as . . . he didn't want the jury to see him object to something that was not important"). "[N]ot drawing attention to [a] statement may be perfectly sound from a tactical standpoint." *United States v. Caver*, 470 F.3d 220, 244 (6th Cir. 2006). "[T]rial strategy looms as an important consideration in deciding whether to object during closing argument." *State v. Cannady*, 389 S.W.3d 306, 310 (Mo.Ct.App. 2013).

As to the specification of ineffective assistance of counsel based on the prosecutor's closing argument, therefore, the Indiana Court of Appeals reasonably concluded that neither prong of a meritorious *Strickland* claim had been established.

Juarez claims that he was denied the effective assistance of counsel "because [of] the cumulative effect of trial counsel's errors." Even if a given error is not individually prejudicial, a series of errors may constitute a "pattern of ineffective assistance" under *Strickland*. *Goodman v.*

*Bertrand*, 467 F.3d 1022, 1030 (7th Cir. 2006). To prevail on such a claim requires that a petitioner establish two elements: (1) at least two errors were committed in the course of the trial; and (2) considered together, along with the entire record, the multiple errors so infected the jury's deliberation that they denied the petitioner a fundamentally fair trial. *Alvarez v. Boyd,* 225 F.3d 820, 824 (7th Cir. 2000). As discussed above, the Court has found that Mr. Juarez's arguments of ineffective assistance of counsel to be without merit and therefore they fail to support a claim of cumulative error. *United States v. Guerrero*, 938 F.2d 725, 731 (7th Cir. 1991). The remainder of his cumulative error argument amounts to second-guessing his attorney's decisions that were found to have been made pursuant to a viable strategy. Such decisions will not be second-guessed by a judge playing the role of "Monday-morning quarter-back." *Smith v. Gaetz*, 565 F.3d 346, 354 (7th Cir. 2009).

   *Appellate Counsel's Representation.* Mr. Juarez claims that his appellate counsel in *Juarez I* was ineffective for failing to raise claims regarding final instructions 2, 3, and 6. The Indiana Court of Appeals determined that because no error occurred in failing to object to final instructions 2, 3, and 6, appellate counsel was not ineffective for his failure to challenge them. This was a reasonable application of *Strickland*. *McNary v. Lemke*, 708 F.3d 905, 921 (7th Cir. 2013) (stating that appellate counsel cannot be ineffective for failing to raise a meritless issue); *United States ex rel. Jones v. Harrington*, 2014 WL 859532, at *12 (N.D.Ill. Mar. 3, 2014)("The state appellate court agreed with the state trial court's judgment that because [Mr. Juarez] did not make a substantial showing that trial counsel was ineffective, he did not make a substantial showing that appellate counsel was ineffective. This Court has ruled that the state court reasonably rejected [Mr. Juarez's] claim of ineffective assistance of trial counsel. It follows that the state appellate court's treatment of his claim of ineffective assistance of appellate counsel was likewise

reasonable."), *aff'd sub nom. Jones v. Butler*, 778 F.3d 575 (7th Cir. 2015).

Mr. Juarez's claims of ineffective assistance of counsel do not support the relief he seeks here. *Stern v. Meisner*, 812 F.3d 606, 610 (7th Cir. 2016) ("In other words, [the habeas petitioner] must show a complete absence of reasonableness in the [state] appellate court's decision.") (citing *Harrington,* 562 U.S. at 98). As to each of the ineffective assistance of counsel claims fairly presented to the Indiana state courts or otherwise properly available for federal habeas review, the Indiana Court of Appeals recognized and identified the governing standard, as determined by the Supreme Court of the United States, "took the constitutional standard seriously and produced an answer within the range of defensible positions." *Mendiola v. Schomig,* 224 F.3d 589, 591 (7th Cir. 2000). And because it was a reasonable application of the controlling federal standard, "[u]nder AEDPA . . . it cannot be disturbed." *Hardy v. Cross,* 132 S. Ct. 490, 495 (2011).

### IV. Conclusion

Mr. Juarez's conviction withstood challenge in the Indiana courts, and thus a presumption of constitutional regularity attaches to it. *See Farmer v. Litscher,* 303 F.3d 840, 845 (7th Cir. 2002) (citing *Parke v. Raley,* 506 U.S. 20, 29-30 (1992)); *Milone v. Camp,* 22 F.3d 693, 698-99 (7th Cir. 1994).

AEDPA "leav[es] 'primary responsibility' for adjudicating federal claims to the States." *Johnson v. Williams,* 133 S. Ct. 1088, 1097 (2013) (citing *Woodford v. Visciotti,* 537 U.S. 19, 27 (2002)). This Court has carefully reviewed the state record in light of the habeas claims and has given such consideration to those claims as the limited scope of its review in a habeas corpus proceeding permits. The claims which were properly preserved in the Indiana state courts do not warrant relief in light of the deferential standard required by the AEDPA. *Harrington v. Richter*, 562 U.S. 86, 101 (2011)("A state court's determination that a claim lacks merit precludes federal

habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision.") (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

Having applied the appropriate standard of review, and having considered the pleadings and the expanded record, Mr. Juarez's petition for writ of habeas corpus must be denied.

Judgment consistent with this Entry shall now issue.

### CERTIFICATE OF APPEALABILITY

Pursuant to Federal Rule of Appellate Procedure 22(b), Rule 11(a) of the *Rules Governing § 2254 Proceedings*, and 28 U.S.C. § 2253(c), the Court finds that Mr. Juarez has failed to show that reasonable jurists would find "it debatable whether the petition states a valid claim of the denial of a constitutional right." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). The Court therefore **declines** to issue a certificate of appealability.

IT IS SO ORDERED.

Date: 8/4/2017

Hon. Jane Magnus-Stinson, Chief Judge
United States District Court
Southern District of Indiana

Distribution:

Chandra Hein
INDIANA ATTORNEY GENERAL
chandra.hein@atg.in.gov

Mark Small
ATTORNEY AT LAW
marksmall2001@yahoo.com